Roop v. Herron.

JOSIAH ROOP, PLAINTIFF IN ERROR, v. NATHANIEL HERRON, DEFENDANT IN ERROR.

1. **Partnership**: INSOLVENCY: INDIVIDUAL CREDITOR OF ONE PARTNER. When a firm is insolvent the partnership property will be applied to the payment of the partnership debts, and an individual creditor of one of the partners is not entitled to be paid out of such property in preference to partnership creditors.

2. ———: ———: TRANSFER BY ONE PARTNER TO CO-PARTNERS. A transfer of the interest of a partner of an insolvent firm to his co-partner does not enable the assignee as against the creditors of the firm to apply the partnership property to the payment of his individual debts.

ERROR to the district court of Gage county. Tried below before WEAVER, J. The opinion states the case.

*J. E. Bush,* for plaintiff in error.

1. Partnership property is liable for partnership debts before a dissolution of partnership, but after a dissolution of the partnership and a transfer of the property by the firm, either to a co-partner or to any other person, the creditors of the partnership lose that lien the law gives them upon a partnership property. *Wilson v. Kellogg,* 11 Ohio, 394. *Smith v. Howard,* 20 Howard's Pr. Rep., 121. *Hapsgood v. Cromwell et al.,* 48 Ill., 64.

2. When a *bona fide* sale is made of the property of a firm by the members, before any proceedings either in law or equity are instituted by the creditors of the firm, such creditors cannot by any subsequent proceedings acquire a lien upon the property when disposed of. *Gwin v. Selby,* 5 Ohio State, 97.

3. As the ordinary creditors of an individual have no lien on his property and cannot prevent him from disposing of it as he pleases, so the ordinary creditors of a firm have no lien on the property of the firm so as to be able to prevent it from parting with that property to whomsoever it chose. 2 Lindley on Part., 654, and cases cited.

4. A transfer by a firm to one partner *bona fide* and by him to a third person in a like manner for a valuable consideration passes both the legal and the equitable title to the property against the creditors of the firm. *Belknap v. Cram,* 11 Ohio, 412.

5. When one of two partners retires from business, re-

linquishing to the other all his interest in the partnership property, the remaining partner acquires the same do-minion as if it had ever been his own separate property. *Smith v. Howard,* 20 How. Pr., 121. Story on Part., § 358. *Hollis v. Staley,* 59 Tenn., 167.

*L. M. Pemberton,* for defendant in error.

1. The *insolvency* of the partnership changes the rule contended for by plaintiff. *Till's Case,* 3 Neb., 261. *Phelps v. McNeely,* 66 Mo., 554; S. C. 27 Am. Rep., 378. *Tenny v. Johnson,* 43 N. H., 144. *Deveau v. Fowler,* 2 Paige, 400. *Topliff v. Vail,* Harrington Ch. (Mich.), 340. *Menash v. Whitewell,* 52 N. Y., 146. *Conroy v. Woods,* 13 Cal., 626. *In re Cook,* 3 Biss., 122. *Ransom v. Van Deventer,* 41 Barb., 307. *Black v. Bush,* 7 B. Mon., 210. *Collins v. Hood,* 4 McLean, 186. *Hubbard v. Curtis,* 8 Iowa, 1.

2. All debts due from the joint fund must first be discharged before any partner can appropriate any part of it to his own use, or *to pay any of his private debts,* and a creditor of one of the partners cannot claim any interest but such as belongs to his debtor, *whether his claim be founded on a contract with a debtor,* or on a seizure of the goods on execution or attachment. 2 Lindley on Part., 1055, note 2, and cases there cited. Pars. on Part., 353. *Bowen v. Billings,* 13 Neb., 443. In case at bar, the firm being insolvent, Jones had no interest in the firm property that he could turn over to pay his private debts.

MAXWELL, J.

This is an action of replevin brought by the plaintiff against the defendant to recover certain goods levied upon by the defendant, as sheriff, under an order of attachment. On the trial of the cause the court found in favor of the

defendant. This cause is submitted upon the following stipulation: "It is hereby stipulated and agreed between the parties to this action that the following is a true statement of the facts:

"1st. That from January, 1882, John P. H. Jones and Omar DeLand were partners, doing business at Blue Springs, Gage county, Nebraska, under the firm name of Jones & DeLand.

" 2d. That on the 25th day of March, 1882, said partnership of Jones & DeLand was dissolved by mutual consent, notice by publication in the Blue Springs Motor of said dissolution was given. Said Omar DeLand retired from said firm, and said John P. H. Jones continued the business in his own name, and kept all the goods belonging to said firm and agreed with the said DeLand to pay all the debts contracted by said firm.

"3d. At the time of dissolution of said firm of Jones & DeLand, and at the time of contracting the debts to and buying the goods of King Bros. & Co., and borrowing the $250 from plaintiff as hereinafter stated, said firm of Jones & DeLand was insolvent.

"4th. All the goods and property claimed by plaintiff in this action were purchased by said firm of Jones & De Land in January, February, and March, 1882, from said King Bros. & Co., of Chicago, Ill., and from other creditors, and none of said goods have been paid for, and that they are all a part of the partnership goods received by said Jones from said firm of Jones & DeLand at the dissolution of said firm, and all of said goods were obtained from said King Bros. & Co., who were induced to sell said goods to said Jones & DeLand through fraudulent representations as to the amount of property owned by said firm of Jones & DeLand, and said false representations were made by said Jones for the purpose of obtaining said goods now claimed by plaintiff in, this action, but this plaintiff knew nothing about said fraudulent representation.

"5th.   The goods claimed by plaintiff in this action are held by the defendant, who is sheriff of said county, under and by virtue of an order of attachment issued out of the district court of Gage county, Nebraska, and levied by said defendant sheriff on said goods, at the suit of King Bros. & Co., which suit is brought in the individual names of members of said firm against John P. H. Jones and Omar DeLand, and all the property claimed by plaintiff except the tea, tea caddies, and the boots were purchased on or about March 1st, 1882, by said firm of Jones & DeLand from said firm of King Bros. & Co., and firm of Jones & DeLand is indebted to said firm of King Bros. & Co. in the sum of $801 for goods purchased by them of the said firm of King Bros. & Co. on or about March 1st, 1882, to obtain pay for which said attachment suit is brought.

"6th.   Said John P. H. Jones, during the continuance of the partnership of said Jones & DeLand, to-wit, in the month of February, 1882, borrowed $250 from plaintiff, who took the individual note of said Jones for said debt. Said money was not used for the benefit of said firm of Jones & DeLand, but for the sole benefit of said Jones.

"7th.   On or about the 4th day of April, 1882, after one of the creditors of said firm of Jones & DeLand had, with the plaintiff's knowledge and consent, taken possession of the goods sold by them to said firm of Jones & De Land, in satisfaction of the purchase price of said goods, said John P. H. Jones, successor of said firm of Jones & DeLand, delivered to plaintiff in this action the goods claimed by plaintiff herein before they were attached by defendant sheriff at the suit of King Bros. & Co. in full settlement of plaintiff's claim of $250, and said plaintiff has no list of said property except that copied by him from officer's return in said suit.

"8th.   The property so delivered to plaintiff by said John P. H. Jones, and herein claimed by plaintiff, is worth $493.95, invoiced at the cost price of said goods, without

cost of carriage, and plaintiff herein, at the time said goods were delivered to him by said John P. H. Jones, knew that said goods formerly belonged to said firm of Jones & De Land, and that said firm, and each of the members thereof, was insolvent. That some of the grounds for attachment alleged in the affidavit on which said order of attachment issued are true."

It will be seen from the admitted facts that Roop received this partnership property to the amount of nearly twice his claim, he at the time knowing it to be partnership property, and that the firm was insolvent. He was not therefore a bona fide purchaser.

The question here presented was before the court in *Till's Case*, 3 Neb., 261. In that case a firm doing business as William Till & Co. dissolved partnership and divided the assets of the firm among the members thereof, and then claimed the property as exempt under the exemption law. The present chief justice, speaking for the court, says (pages 262–3): "But suppose it were shown satisfactorily that the partnership had terminated by the agreement of the parties, and nothing more, still the relator would not be entitled to hold this property released from the lien of his co-partner for the satisfaction of their joint debts. To give him this right, he is required to show that such was their agreement, and that it was made *bona fide*. If nought but a bare dissolution be shown, it will be presumed that the assets of the firm are held by the member thereof, in whose possession they may be found clothed with a trust for his former associates to apply the same in satisfaction of the demands of their joint creditors. *Ex Parte Williams*, 11 Ves., 3. Story on Partnership, §§ 360, 361." And in *Bowen v. Billings*, 13 Neb., 439, it was held that in case of insolvency of the firm, partnership debts are to be paid out of the joint fund before any portion of it can be applied to other purposes. Kent says: "The joint creditors have the primary

claim upon the joint fund, in the distribution of the assets of bankrupt or insolvent partners, and the partnership debts are to be settled before any division of the funds takes place. So far as the partnership property has been acquired by means of partnership debts, those debts have in equity a priority of claim to be discharged; and the separate creditors are only entitled in equity to seek payment from the surplus of the joint fund after satisfaction of the joint debts." 3 Kent Com., 64.

This principle is recognized in cases where an execution for the separate debt of one of the partners is levied upon the partnership property. In such case the judgment creditor cannot levy upon the moiety or undivided share of the judgment debtor in the property, as if there were no partnership debts; but his levy is restricted to the interest of the judgment debtor therein after the adjustment of the partnership debts." *Hankey v. Garrett*, 1 Ves., 239. *Barker v. Goodair*, 11 Id., 85. *Muir v. Leitch*, 7 Barb., 341. *Deal v. Bogue*, 20 Penn. State, 228. Story's Eq. Juris., § 677.

A purchaser under the execution acquires no right to the joint property so as to entitle him to take it from the other partners. He merely takes the interest of the judgment debtor which on a settlement shall be found to exist. *Nixon v. Nash*, 12 Ohio State, 647. Story's Eq. Juris., § 677, and cases cited.

In the case cited from Ohio it is said (page 650): "Each partner holds his interest in the joint property subject to a trust for the partnership creditors and the claims of his his several co-partners; so that the beneficial interest of each is his residuary share after the partnership accounts are settled, and their rights *inter sese* adjusted."

The uniform current of authority in this country is in consonance with these decisions. If, therefore, in a sale upon an execution against an individual partner only his interest in the partnership property after the settlement of

the partnership accounts can be sold, because the debtor possesses no greater interest therein, can a partner of an insolvent firm divest partnership property of its distinctive character by simply assigning his interest in the firm to his co-partner?    A partnership is a distinct entity, having its own property, debts, and credits.    For the purposes for which it was created it is a person, and as such is recognized by the law.    And the credit being given to the firm —in effect to the partners jointly, it would seem but justice that the goods so purchased should not be diverted to the use of an individual partner, when such diversions will have the effect to defraud the creditors of the firm. It may be said the goods having been sold to the firm the creditors thereby surrendered all control over them and trusted alone to the solvency of the debtor firm for payment; that the delivery being complete and without conditions, the debtor firm could make what disposition of the property it saw fit.    In a sale to an individual upon credit, in addition to the agreement to pay the debt, there is an implied agreement that the debtor's property shall, if necessary, be applied for that purpose.    Now, if the debtor attempts to divert his property from this purpose—to place it beyond the reach of his creditors—the law at once authorizes its seizure · by attachment to prevent the creditor from being defrauded.    So, with property held by a firm, there is an implied agreement that all its assets shall, if necessary, be applied to the payment of the firm debts, and any diversion of such assets of an insolvent firm is a fraud upon its creditors.    In other words, the partnership property is a trust fund to the extent of the partnership liabilities, and to be applied in satisfaction of the same. *Egbert v. Woods*, 3 Paige Ch., 517.    *Innes v. Lansing*, 7 Id., 583.    *Whitewright v. Stimpson*, 2 Barb., 379.    This being so, can the members of an insolvent firm by simply assigning their interest in the property defeat this trust and change the character of the property from partnership

to that of an individual? If so, it affords an easy mode of defeating partnership creditors. The creditors might say, we gave the credit because the firm seemed to possess sufficient assets to pay its debts and if in good faith they are applied to that purpose they are sufficient. The right of the members of a firm, who as a firm have induced others to give them credit, to change the firm property to that of an individual member of the firm, without the consent of creditors, is very doubtful. In this case the partnership was insolvent, as the plaintiff well knew, yet he obtained nearly twice the amount of his claim in partnership goods. He was in no sense an innocent purchaser and is not entitled to protection as against the creditors of the firm. And even if the retiring member of the firm could defeat the creditors by giving his consent thereto, still no such consent is shown. The case is similar therefore to *Till's, supra*—that where nothing is shown but a transfer of the property to a partner, the presumption is that he holds it in trust for the creditors. There is no error in the record and the judgment is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.